Good morning. May it please the Court, good morning, Your Honor. I'm Thomas Mosley, counsel for the petitioner. Speak right into the microphone, please. Yes, Your Honor. The decision of the Board of Immigration Appeals in this case should be reversed under settled principles of administrative law and under the categorical approach. Under the Cheney Doctrine, an administrative agency decision can only be sustained based upon the reasoning adopted by the agency. And under the categorical approach, when you analyze a conviction in the context of a crime involving moral turpitude determination, you utilize the – you rely upon the least culpable conduct, the least legal elements necessary for conviction. Here, the Board of Immigration Appeals sustain the CIMT determination based upon a line of cases holding that obstruction by graft, trickery, and dishonest means constitutes a CIMT. That's the fundamental premise of the decision. That's the, if you will, the round hole in the shifting jigsaw puzzle of BIA jurisprudence on crime involving moral turpitude in which they sought to place my client's, I would submit, square-peg conviction. Because if you analyze the obstruction statute, if you analyze the statute here, dishonest, mean, dishonest, trickery, et cetera, are simply not necessary legal elements for conviction. And under these circumstances, that CIMT determination should be reversed on that basis under the categorical approach. It's simply not necessary for any of these That's an analysis that we do de novo, right? That's an analysis of the federal statute, and we're not deferring to the agency. Right. You're absolutely not deferring to the agency, Judge Little. Where have we said that we have to apply the categorical approach? You've said it in virtually every — Have we said it in this context? Yes, you have. In the immigration context? You certainly have done so in the immigration context. Most recently, for example, in one of the cases that we submitted by Rule 28J letter, the Hilton case makes that clear. And that's why I submit that the Board of Immigration That's with aggravated felonies. Yes, but it's also — but, I mean, we have cases going back to — going back all the way on crime involving moral turpitude, Judge Pooler. And the Board of Immigration Appeals even conceded that the categorical approach applies. So, I mean, the entire jurisprudence on crime involving moral — on moral turpitude in this circuit going back many years to the time when that was first part of the jurisprudence, first part of immigration jurisprudence applies the categorical approach. That's the one thing on which I don't differ with the Board of Immigration Appeals. So this case, I submit, resembles the — Please enter the microphone. Yes. In this case, I submit — this case, I submit, strongly resembles Candelario, the Third Circuit decision in which a similar obstruction statute was held to be a crime involving moral turpitude, but in that very persuasive decision, the Third Circuit reversed because these means of dishonesty graft were simply not necessary legal elements. So under these circumstances, I — I would urge that applying the categorical approach here would require reversal of the crime involving moral turpitude determination. Moreover, I think it's important to note the Board talks about realistic probability, but as the Hilton case makes abundantly clear, the real probability test is satisfied — is satisfied by the fact that the legal elements of this statute do not require — do not require graft, trickery, fraud, or any of those elements. Well, there is a case, the Edwards case, in which the Sixth Circuit upheld a conviction under 1513 where somebody spray-painted somebody's car. That was the damage or threat that was the basis of a conviction, so that it's been applied really very broadly. That's true, but I think — That's something I'm saying in your favor, so don't say but. Yes. No, I know. It has been — it has been applied very broadly, and I don't mean to overlook that fact. So under these circumstances, I would submit that the CIMT determination should be reversed in that case. If that is done, then the other legal arguments that we make in this case need to be reversed. The argument on vagueness is an interesting one in view of what the Supreme Court has been doing, and especially in view of Justice Gorsuch's recent approval of Justice Jackson's dissent in DeGeorge way back then, which suggests that the Supreme Court may be rethinking the question of vagueness with respect to crimes involving moral turpitude, but that may not be something we need to reach if we were to agree with your narrower ground. That is — that's quite correct, Justice Calabresi. You would not need to reach that or need to reach the other arguments that we make with respect to whether the five-year period is indeed a statute of limitations or whether the immigration judge erred in — What is the most benign conduct under 1513 that would not require punishment? What is the most benign conduct under 1513 under the categorical approach that would allow Mr. Ziziak to avoid being termed a violation of CIMT? Well, Judge Pooler, what the conduct that isn't necessary here is the conduct on which the Board of Immigration Appeals relied. So the Board of Immigration Appeals took this proposition that under the line of 1513, you have to have cases, which they can do, I suppose, that you have to have graft, trickery, and dishonest means. Those are not necessary legal elements, so necessary legal elements for the Mission Code. What is the barest legal element that you think would allow Mr. Ziziak not to be convicted of a CIMT? Well, it's not the statute. It's not the legal elements under the statute. It's the absence of the legal elements under the statute. The Board of Immigration Appeals decision is predicated upon the fact, upon the analysis that these elements, graft, trickery, and dishonest means, are elements of the statute. And they're not, just as they were not in the Candelaria case, which made clear in that case the not necessary legal elements under that case. And in that case, it made clear that because that obstruction statute swept more broadly, therefore, under the categorical approach, it wasn't a crime involving moral turpitude. You have reserved two minutes for rebuttal. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court, Timothy Hayes on behalf of the Attorney General. Petitioner is deportable because he has been convicted of a crime involving moral turpitude within five years of his admission. You heard counsel's argument. Yes, Your Honor. That this statute doesn't give rise to a CIMT. Try and respond to that. Yes, Your Honor. The statute has two elements. One is unknowingly threatened to damage the tangible property of another, and that would be probably the minimum conduct to be convicted under it. Okay. Let me give you an example. Suppose somebody has violated parole or supervised release, which was statute-specific to as being a violation. They violated supervised release because they want to go see their sick mother somewhere, and they haven't told the probation officer. Somebody hearing of this gets mad and threatens to let the person who has said that to let his dog do its duties on that person's lawn. That is a threat of physical harm under 1513 for this kind of behavior. It's specifically what the statute covers. Now, is that a crime involving moral turpitude? I mean, the presiding judge asked for an example of the other side. The other side didn't give one, so I'm giving you one. Well, I think the most common minimum example would be something along the lines of threatening someone's car or threatening someone's own. Well, the case I gave before was saying spray painting a car. But I'm just giving you, you know, the problem with these cases is the categorical approach, which, frankly, in many ways is absurd. But that's what we got. And if you use the categorical approach, it seems to me quite clear that 1513 includes any number of crimes which don't involve what we would call moral turpitude. I gave you an extreme example, but even short of that, one can find other things. Now, if that is so, doesn't that settle this case? Well, I disagree that that doesn't involve moral turpitude under the Board's definition. The Board has a variety of definitions, but the one that applied to this case, and it's on page 6 of the administrative record, says, appearing and obstructing a function of a department of government by defeating its efficiency or destroying the value of its lawful operations. And then the key here is by deceit, fraud, or dishonest means. Dishonest means, if you look in Black's dictionary, that with regard to an action is Do you concede that the hypothetical I gave you violates this statute? I don't know, Your Honor. You don't know. That would be for the Board to decide. It looks very much as if it does on the language of it. And if that is so, do you say that conduct of that sort meets the requirements of what the BIA has said is immoral? Well, anything that's underhanded or discreditable would be dishonest, so it could potentially meet. My problem is that if something of the sort that I have said is actually in or is out, then we're talking about a degree of uncertainty about what this statute means, that especially under the Supreme Court's recent decisions on vagueness, gets the whole thing in doubt. So that I think the government is in a way in a difficult position, because if it says that what is literally under the statute can be moral turpitude, then we're raising questions today of vagueness, which may not have been there in the past. Well, if instead you say, okay, sorry, under the categorical approach, then vagueness may be something which can be avoided. But I think you've got to be careful that if you win, you may lose. In the bigger picture, yes, Your Honor. So tell me how violation of this statute is a crime of moral turpitude. Because it involves dishonest means. Under all permutations that are reasonably probable to be convicted under the broadest reading, under the broadest reading, it involves dishonesty. Well, I mean, if it's underhanded, if it's – with regard to an action, if it's not involving straightforward dealing, it's an underhanded means. And I think messing with someone's dog is pretty underhanded. With a specific intent to retaliate for participating in an official proceedings, I think that would suffice under the board. May I ask a question? Yes, Your Honor. No, I was just going to say, a fortiori, messing with witnesses is – Right, right. I'm not talking about – I know that the conviction has two prongs. I'm specifically focusing on the witness one. Yes. But the BIA has interpreted moral turpitude, putting the statute to the side for a moment, to entail these necessary elements of reprehensible conduct in a culpable mental state. Yes, Your Honor. I mean, why isn't the simple answer to this is that this offense protects the public interest in the administration of justice by protecting witnesses who want to come forward and give evidence. It's not like assault. There's a specific intent requirement. It may involve threats to property, but that's – when you look at the intent element and the threat to a property interest, that's enough. It's reprehensible. It is. And the board has been very clear that if it was strictly obstruction of justice without that specific intent, without something more, that would not be morally turpitudinous. But this is obstruction of justice with an aggravated factor. It's very similar to the Ramirez case out of the Fourth Circuit. Give me an example of obstruction of justice without a culpable intent. Well, for example, if you know someone who – you take someone's car keys and you don't let them go to the courthouse and they have a court hearing, you don't say anything, you just misplace them. And if they would have found their keys, they could have gone to court. Something similar to that. Or a more – even a better example would be that Third Circuit case that was brought up, the Calderon case. That statute reads, intentionally obstructs, impairs, or perverts the administration of any law by obstacle, breach of official duty, or any other unlawful act. It's a much broader written statute than this intent to retaliate statute. So that would be another example, as the Third Circuit said, that not all permutations of that would be morally turpitudinous. Turning to the within five years of admission part, Mr. Dzidzisiajk entered the United States without inspection. So he had no technical admission date as the act defines the term admission. Under board case law, his admission date then, since he was an unlawful permanent resident, would be the date he adjusted his status. And that was in May 2006. And since his conspiracy occurred within the timeframe of April 2006 through September 2008, it was within five years. Turning to the 1182-H waiver issue, unless the Court has questions on it, I think the Seepersad case – And then the Court may review the protection under the Convention Against Torture application for substantial evidence. Here we have a man from Poland who fears his co-conspirators that he discuss Well, here, the BIA had clearly erred when they said he could relocate someplace else in the European Union and so on. I think that's a mistake. The question for me is, if that is a mistake, is sending it back for consideration of the CAT futile, that is, is there enough otherwise? And that's, you know, it's not a question of whether there is sufficient evidence, but whether it is clear enough so that it is futile. And, you know, you might address that. Well, Your Honor, I disagree that that was an error. Under 8 CFR 1208.16c3 – Well, for the moment – for the moment, accept my position that it is an error and tell me why it is futile to send it back. Well, to the extent it is an error, it doesn't infect the overall analysis. And I think it's pretty clear that in this case, we have concrete evidence of two threats being made over a several-year period. There is also no evidence of governmental acquiescence whatsoever outside of the testimony from a person who hasn't lived in Poland for 17 years that he fears that the Polish police would not protect him. So I think even if we assume that the Board erred, the error isn't material in this case. Didn't the BIA make an error in concluding that the test was clear probability that he would be tortured? Isn't that an error? Well, clear probability means more likely than not. That is a standard that the Board would assess. More likely than not is the correct standard. Right. But clear probability doesn't convey that standard, does it? It's used interchangeably in case law. I'd be happy to cite that. But, yeah, that clear probability is a synonym for more likely than not. I see that my time's up, unless the panel has further. Thank you very much, Your Honors. Thank you. Mr. Mosley, you have two minutes. Your Honor, I think that the case law – first of all, the case law. If you don't speak into the microphone, I can't hear you. I understand, Your Honor. The case law that we cite makes clear that clear probability is not, is a much higher standard than preponderance of the evidence. That's on its face, and that's a plain legal error. With respect to the issue of relocation within the European Union, that whole error, which the Board didn't even address, which the Board didn't even address, I submit infects the immigration judge's fact-finding. And when you couple that with an affirmance on the basis of clear probability, the case certainly should be remanded. The adversary's argument for saying that that is immaterial is it would be futile because there wasn't sufficient evidence or any evidence other than your client's testimony about fearing that the government would acquiesce in his mistreatment in Poland. Can you address that? Well, he gave – he gave – the immigration judge found him credible. He gave his lay opinion on that particular point. But there were certainly other facts in mind in the – the, Your Honor, the letters, the threat letters actually indicated that they, you know, regardless, they were going to be able to get him. So that's an expression of intent under the Hillman doctrine, which should have been considered, and that's another error I submit that the Board made requiring remand here. If we agree with you on the crimes involving moral turpitude, do we need to reach this issue or not? No. Then the – that's the sole charge of removability. The case should be terminated. I want to get back, though, to the CIMT issue. To be sure, as you point out, Judge Livingston, the Board might have made another decision or a new rationale, but it didn't. And it's the Board's rationale on which we have to rely. And the fundamental premise, the syllogism, the primary syllogism of the Board is this has to be by graft, trickery, or dishonest means. And the minimum con – and those are simply not necessary legal elements. What is the minimum conduct that you think would not sweep in CIMT? The – Judge – and Judge Kulit, it's not the minimum conduct, I submit, but the absence of the necessary conduct. In other words, the Board of Immigration Appeals said that to be a crime involving moral turpitude, we're relying upon these lines of cases that say that the following means have to be utilized. None of those means are necessary legal elements in the case, and they're not necessary legal elements under the – under the face of that – So your argument is that the Board erred in saying that fraud or dishonesty is necessary. They may have erred, but that was their reasoning. That was their reasoning. We can substitute a different reasoning here, and that – that fraud dishonesty is not part of the reasoning. Not necessary legal elements here. That's exactly my argument, Judge Livingston. Okay. Thank you. Thank you both. I will reserve decision.